**AFFIRM; and Opinion Filed July 8, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01006-CV

## IN THE GUARDIANSHIP OF RUTH ELLEN BRUNER,
## AN INCAPACITATED PERSON

**On Appeal from the County Court at Law No. 2**
**Hunt County, Texas**
**Trial Court Cause No. G00682**

## MEMORANDUM OPINION
Before Justices Bridges, Brown, and Nowell
Opinion by Justice Brown

Ruth Ellen Bruner appeals the trial court's order appointing a permanent guardian of her estate. She contends the trial court abused its discretion in granting the guardianship because there is insufficient proof the court considered alternatives that would avoid the need for guardianship and determined they were not feasible. We affirm.

The Texas Estates Code contains numerous prerequisites to the appointment of a guardian for a proposed ward. *See* TEX. EST. CODE ANN. §§ 1101.101-.105. Bruner challenges the evidence of two of them. As is relevant to this case, before a court can appoint a guardian, it must find by clear and convincing evidence that: 1) alternatives to guardianship that would avoid the need for the appointment of a guardian have been considered and determined not to be feasible, and 2) supports and services available to the proposed ward that would avoid the need for the appointment of a guardian have been considered and determined not to be feasible. *Id.* § 1101.101(a)(1)(D) &

(E). The code sets out nine alternatives to guardianship: 1) execution of a medical power of attorney, 2) appointment of an attorney in fact or agent under a durable power of attorney, 3) execution of a declaration for mental health treatment, 4) appointment of a representative payee to manage public benefits, 5) establishment of a joint bank account, 6) creation of a management trust, 7) creation of a special needs trust, 8) designation of a guardian before the need arises, and 9) establishment of alternate forms of decision-making based on person-centered planning. *Id.* § 1002.0015.

We review guardianship determinations for an abuse of discretion. *In re Guardianship of Laroe*, No. 05-15-01006-CV, 2017 WL 511156, at *5 (Tex. App.—Dallas Feb. 8, 2017, pet. denied) (mem. op.). "In guardianship proceedings especially, the heavy responsibility for determining the best resolution of fundamental and emotional issues lies necessarily within the trial court's sound discretion." *In re Thetford*, No. 17-0634, 2019 WL 2237994, at *14 (Tex. May 24, 2019). This Court's review of such a proceeding must be "singularly mindful of the trial court's unique opportunity and responsibility to assess the circumstances presented." *Id.* To determine whether a trial court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles. *Laroe*, 2017 WL 511156, at *5. In guardianship proceedings, legal and factual sufficiency of the evidence are not independent, reversible grounds of error, but are factors to consider in assessing whether there was an abuse of discretion. *Id.*; *In re Guardianship of A.E.*, 552 S.W.3d 873, 877 (Tex. App.—Fort Worth 2018, no pet.). We view the evidence in the light most favorable to the trial court's decision, and an abuse of discretion does not occur when the court's decision is based on conflicting evidence. *Laroe*, 2017 WL 511156, at *5.

Bruner was ninety-six years' old at the time of the permanent guardianship hearing. She is a widow who lives by herself in Commerce, Texas. She owns a home and a vehicle. She does

not have any children and has no relatives living close to her. A physician evaluated Bruner and informed the trial court that Bruner had dementia and was unable to personally handle complex financial decisions or manage a personal bank account. Bruner's estate is worth about $300,000.

Guardianship proceedings were initiated after concerns arose that Bruner was being taken advantage of by scam artists. There were five witnesses at the March 20, 2018 permanent guardianship hearing—Michael Taylor, who had been appointed temporary guardian, Lieutenant Steve Scott with the Commerce Police Department, two employees of Bruner's banks, and Bruner herself. Bruner had accounts at two banks in Commerce, Chase Bank and Cypress Bank. In recent months, her banking activity had changed drastically. She had begun to frequently attempt to withdraw large sums of money. For example, in December 2017, Bruner withdrew $15,000 from Chase Bank. She told the teller she was having some work done on her house, so the teller gave her the money. Then on January 11, 2018, Bruner wanted to withdraw $40,000 to pay "to the same people." At about the same time, Bruner went to Cypress Bank and said she needed to send off $1,100 and would get $400,000 back. On another occasion, Bruner asked Cypress Bank for three cashier's checks, two for $15,000 and one for $30,000. Bruner said she was purchasing land in Florida. The bank asked Bruner for more information, which she was not able to provide, and did not give her the requested checks.

Both banks contacted Lieutenant Scott with concerns Bruner was being scammed. Scott spoke to bank employees and Bruner. Bruner reported that she had won a large sum of money, but had to send in money to get it. Bruner was confused about what exactly she had won. She mentioned both the Publisher's Clearinghouse and the Mega Millions. She also told Scott the money was "to facilitate with the IRS." Scott looked into Bruner's finances and determined she had sent off at least $35,000 in cashier's and personal checks and gotten nothing in return.

To protect Bruner, Scott contacted places where one could obtain a cashier's check. A Wal-Mart store called Scott when Bruner attempted to purchase a cashier's check for a large sum; Scott could not remember if the amount was $10,000 or $40,000. On another day, Bruner left Scott a message telling him she won a Mercedes and needed to bring $1,100 to a man at the Holiday Inn. When Bruner asked the man if she could bring someone with her, he said no. The meeting did not take place. Just four or five days before the permanent guardianship hearing, Bruner contacted Chase Bank for an account number. At the time, the temporary guardianship was in place and Bruner did not have access to her accounts. Bruner told the bank the FBI contacted her because she won money from the Federal Reserve. Bruner needed to provide an account number so the Federal Reserve could wire her the money.

At times, Lieutenant Scott and bank employees could convince Bruner she was being scammed. Bruner was embarrassed and remorseful. But her efforts to withdraw large sums of money from her banks continued. Both banks froze her accounts, and one of them contacted Adult Protective Services.

At the hearing, Bruner denied that she had been scammed. She testified that Scott had "told a bunch of lies," and said, "[t]hese people that have testified, most of them - - most of it are lies." She still believed she won a prize from Mega Millions and that the money was on its way to her. Bruner asked the court to give her back her normal life and said she could not function under "the clutches of [Taylor]."

The trial court decided to make the temporary guardianship permanent and issued an order appointing Taylor as Bruner's permanent guardian. The court's order recites that the court found by clear and convincing evidence that alternatives to guardianship and supports and services available to Bruner that would avoid the need for appointment of a guardian have been considered and determined not to be feasible.

Bruner seeks a new trial. She argues the court abused its discretion in ordering the guardianship because it did not fully consider the alternatives or the supports and services available to her. Bruner argues the record contains no "significant exploration" or "meaningful testimony or other evidence" about the alternatives to guardianship.

Taylor, a certified public accountant and a private professional guardian, was asked if Bruner's situation could be taken care of through a power of attorney or something less restrictive than a guardianship. Taylor responded that Bruner had been exploited by scam artists. He was not sure if giving someone a power of attorney to help manage Bruner's accounts would alleviate the problem. He said such a person would "certainly have to have complete control of the money." He understood that a power of attorney would not provide such control. In Taylor's opinion, the only thing that would work in this case is for someone other than Bruner to have complete control of the money. Robin Alexander, a Vice President of Cypress Bank, was also asked about less restrictive methods for protecting Bruner. She testified she did not know of any that would be effective in this case.

Bruner suggests the record needs to contain express consideration of all the statutory alternatives and other types of support. Several of the alternatives listed in the probate code are inapplicable to the facts of this case and some are contrary to Taylor's recommendation that Bruner not be permitted any access to her money. *See* TEX. EST. CODE ANN. § 1002.0015 (medical power of attorney, representative payee to manage public benefits, designation of guardian before need arises, and joint bank account). Taylor and Alexander both provided evidence that alternatives to guardianship were not feasible in this case. In addition, Bruner did not have the support of any family members who could help manage her money, and she was in extreme denial about being taken advantage of. Viewing the evidence in the light most favorable to the trial court's resolution of this case, it is legally and factually sufficient to support the court's findings that it considered

alternatives to guardianship and supports and services available to Bruner that would avoid the need for appointment of a guardian and determined them not to be feasible.  We conclude the trial court did not abuse its considerable discretion in appointing a permanent guardian for Bruner's estate.  We overrule Bruner's single issue.

We affirm the trial court's order appointing a permanent guardian of the estate.


/Ada Brown/
ADA BROWN
JUSTICE


181006F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE GUARDIANSHIP OF RUTH ELLEN BRUNER, AN INCAPACITATED PERSON

No. 05-18-01006-CV

On Appeal from the County Court at Law No. 2, Hunt County, Texas
Trial Court Cause No. G00682.
Opinion delivered by Justice Brown, Justices Bridges and Nowell participating.

In accordance with this Court's opinion of this date, the trial court's order appointing a permanent guardian is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 8th day of July 2019.